NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA | No. 25cr193 (EP) |
| v. | |
| DAQUAN EDWARDS | **OPINION** |

**PADIN, District Judge.**

Defendant Daquan Edwards was identified as a participant in a shooting in Triangle Park in Jersey City, New Jersey, on June 25, 2023 (herein, the "Incident"). Edwards moves to suppress the identification of him made by Detective Willam Costigan. D.E. 39 ("Motion" or "Mot."). In the alternative, Edwards seeks disclosure of grand jury transcripts to determine the extent of the use of this identification during grand jury proceedings. *Id.* at 1. The Government opposes. D.E. 55 ("Opposition" or "Opp'n"). Edwards replies. D.E. 56 ("Reply"). For the reasons that follow, the Court will **GRANT** Edwards's Motion.

**I.    BACKGROUND[1]**

**A.    The Incident and Law Enforcement's Investigation**

Early in the morning of June 25, 2023, reports came in that shots were fired in Triangle Park in Jersey City. Opp'n at 1. When officers arrived at the scene, they identified multiple vehicles that appeared hit by gunfire. *Id.* No firearm was recovered, and no physical evidence linked any individual to the shell casings found at the scene. Mot. at 2.

---

[1] When deciding a motion to suppress, "the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679 (1980). The facts in this section have been taken from the parties' briefs and the attachments thereto.

The shooting was captured on numerous CCTV cameras surrounding Triangle Park.  Opp'n at 1.  Members of law enforcement reviewed over six hours of footage, which revealed that a trio walked towards Triangle Park and then opened fire at a group of men inside the park.  *Id.* at 1-2. In response, one of the men inside the park stood up and returned fire.  *Id.* at 2.  According to the Government:

> By piecing together the footage from these cameras, [law enforcement] [was] able to capture the movement of the individual who returned fire from Triangle Park in the hours leading up to the shooting and then during the shooting.  The CCTV footage permitted officers to capture a still shot of this shooter from earlier in the day, which clearly depicted the shooter's face and clothing.  Officers created a "be on the lookout" or "BOLO" flyer with still images of the shooter taken from the CCTV footage.  The BOLO was circulated to all officers and at least two of them – Detective William Costigan and Sergeant Ryan Macaluso – identified the individual in the BOLO as Edwards.

*Id.*

Edwards was then charged by the State of New Jersey (the "State") on July 1, 2023, in the Superior Court of New Jersey, Hudson County, with several crimes including attempted murder and unlawful possession of a weapon.  *See New Jersey v. Edwards*, HUD 23-3584 (herein, the "State Action").  On August 7, 2023, Edwards was charged in this District with possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  D.E. 1.  On March 31, 2025, a grand jury returned an indictment charging Edwards with this same crime.  D.E. 20.

**B.    State Action**

There was a hearing held in the State Action at which Detective Costigan testified regarding his identification of Edwards from the BOLO image taken from CCTV footage.  D.E. 39-1, Ex. B ("Hearing Transcript").  Detective Costigan explained that he first became acquainted with Edwards around 2008[2] when he was working in the Jersey City Police Department's East

---

[2] Given Edwards was born in March 1997, this would place their first interaction around the time Edwards was 11 years old.  *See id.* at 20:14-15.

2

District Street Crimes Unit. *Id.* at 8:12-19. Detective Costigan estimated he saw Edwards between 50 to 100 times over the next few years. *Id.* at 10:15-22. But these interactions almost exclusively occurred early on in that time period; after 2015, Detective Costigan could not recall whether he saw Edwards aside from one instance in 2022. *Id.* at 13:7-12. According to Detective Costigan, in the summer of 2022, he saw Edwards on a street corner in Jersey City and the two had a conversation that lasted under a minute. *Id.* at 14:4-8. Detective Costigan was "90%" sure it was Edwards. *Id.* at 26:23-25.

The problem, however, is that Edwards was incarcerated between July 2019 and January 2023. *Id.* at 21:7-11 (reading a copy of the offender details for Edwards from the New Jersey Department of Corrections offender web search). Accordingly, Edwards moved to bar Detective Costigan's identification of him as the shooter inside the park based on the BOLO. *See* D.E. 39-1, Ex. A ("State Action Opinion") at 14.[3] That motion was granted after the State conceded the issue and agreed not to use Detective Costigan's identification of Edwards. *Id.* at 20. Nevertheless, the State Court denied Edwards's motion to dismiss the indictment against him, reasoning that the suppression of an identification does not automatically render an indictment defective. *Id.* at 20-21.

## II.    ANALYSIS

Here, Edwards again moves to suppress the identification of him made by Detective Costigan. Mot. Contrary to the State, the Government has taken the position that Detective Costigan's identification is reliable. Opp'n. As explained in more depth below, the Court agrees with Edwards that Detective Costigan's identification of him was unreliable and would not help a

---

[3] For this exhibit, the Court refers to the page numbers automatically generated by CM/ECF.

jury, and therefore, will **GRANT** Edwards's Motion to exclude Detective Costigan's identification of him.

### A.    Detective Costigan's Identification of Edwards is Inadmissible

The parties dispute the proper framework for the Court to use to determine whether Detective Costigan's identification of Edwards was reliable and therefore admissible. *See* Mot. at 6-8; Opp'n at 3-4. After considering both parties' positions, the Court will follow the procedure recommended by the Government, which was employed by the Third Circuit in *United States v. Livingston*. Crim. No. 21-3213, 2022 WL 16734500, at *2 (3d Cir. Nov. 7, 2022).

In *Livingston*, a defendant who committed two robberies challenged the admissibility of testimony from his probation officer, who identified the defendant from a surveillance photo from the first robbery. *Id.* The Third Circuit initially explained that under Federal Rule of Evidence 701,[4] "[t]estimony is helpful when a witness is 'better position[ed] than the jurors to form an opinion or make an inference.'" *Id.* (quoting *United States v. Fulton*, 837 F.3d 281, 292 (3d Cir. 2016)); *see also United States v. Farnsworth*, 729 F.2d 1158, 1160 (8th Cir. 1984) ("This criteria is fulfilled where the witness is familiar with the defendant's appearance around the time the surveillance photograph was taken and the defendant's appearance has changed prior to trial."). To decide whether a witness is in fact better positioned than the jury to make an identification, the Court looks at all the circumstances, including:

---

[4] In full, Rule 701 provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

1. the witness's familiarity with "the defendant's appearance at the time the crime was committed" and "the defendant's customary manner of dress [that is] related to the clothing of the person depicted in the surveillance photograph," [*Fulton*, 837 F.3d at 297-98],

2. whether the defendant was disguised during the crime or has since changed his appearance, and

3. whether the witness "knew the defendant over time and in a variety of circumstances." [*Fulton*, 837 F.3d at 297-98] (internal quotation marks omitted).

*Livingston*, 2022 WL 16734500, at *2. Using this framework, the Circuit held that the district court properly admitted the probation officer's testimony. *Id.* Although the officer had only met the defendant twice before—for a total of ninety minutes—those meetings occurred within five days of the first robbery. *Id.* In addition, when the probation officer met with the defendant, the defendant wore the same white polo he donned during one of the robberies and had the same facial hair that he did during the first robbery (but had shaven it off by the time of the second). *Id.* On that record,

> the probation officer was better positioned than the jury to identify Livingston from the photo, [and therefore,] his testimony was admissible. *See United States v. Towns*, 913 F.2d 434, 445 (7th Cir. 1990) (admitting identification testimony from a witness who, on the day of the robbery, saw the defendant with a later-shaved mustache); [*Farnsworth*, 729 F.2d at 1160-61] (admitting parole officers' testimony identifying a bank robber who had grown a post-robbery beard); *United States v. Pierce*, 136 F.3d 770, 773-76 (11th Cir. 1998) (admitting a probation officer's testimony identifying a disguised bank robber); *United States v. Garrison*, 849 F.2d 103, 107 (4th Cir. 1988) (admitting a probation officer's testimony identifying a bank robber who had lost weight post-robbery).

*Id.*

The Government relies on *Livingston* and the above string of cases to argue that Detective Costigan's identification on Edwards was also reliable. Opp'n at 3. The Court disagrees.

For starters, Detective Costigan's identification of Edwards is critically distinguishable from several of the above cases, including *Livingston*, because of the temporality of his interactions

with Edwards to the time of the identification.  Unlike in those cases where the court found an identification reliable given the witness saw the defendant on the same day or week as the crime, Detective Costigan's last interaction with Edwards was years prior to the Incident.  And in *Farnsworth*, even though the two officer witnesses did not see the defendant the same week as the crime, they both had frequent contact with the defendant during the months leading up to the crime and became familiar with the defendant's appearance over that period, which aided in the jury as the defendant wore a scarf over his face during the robbery (and therefore, was harder to identify). 729 F.2d at 1160-61.  By contrast, there is no indication that Edwards was wearing a disguise or would be otherwise difficult to identify—indeed, the Government itself describes the image in the BOLO as "clearly depict[ing] the shooter's face and clothing."  Opp'n at 2.

Further fueling the Court's determination that Detective Costigan's identification is inadmissible is the fact that his 2022 identification of Edwards was proven wrong when it was revealed that Detective Costigan could not have seen Edwards on a street corner in 2022 given Edwards was incarcerated.  Thus, Detective Costigan, at best, saw Edwards about eight years before the Incident, and has already mistakenly identified Edwards based on that aged recollection. Moreover, as Edwards notes, the majority of Detective Costigan's interactions with Edwards occurred during the time Edwards was an adolescent—*i.e.*, a period of meaningful physical change—which further distinguishes this case from those cited in *Livingston*, where the defendants were all adults with relatively stable physical appearances (aside from superficial changes like facial hair).  Mot. at 8.

Applying the factors set forth in *Fulton*, the Court finds:  (1) that Detective Costigan was not particularly familiar with Edwards's appearance at the time of the crime given their last interaction occurred about eight years before when Edwards was a teenager; (2) Edwards was not

6

disguised and there is no indication that his appearance has changed since the Incident;[5] and

(3) that although Detective Costigan knew Edwards over a lengthy period of time, that period was

almost a decade before the Incident.  As further explained in *Fulton*,

> an opinion only qualifies as helpful "if it aids or clarifies an issue that the jury *would not otherwise be as competent to understand*." [*Lauria v. Nat'l RR Passenger Corp.*, 145 F.3d 593, 600 (3d Cir. 1998) (emphasis added in *Fulton*)].  Lay opinion testimony that aids in the identification of suspects "is particularly valuable where . . . the lay witnesses are able to make the challenged identifications based on their familiarity with characteristics of the defendant *not immediately observable by the jury at trial*." [*United States v. Langford*, 802 F.2d 1176, 1179 (9th Cir. 1986) (emphasis added in *Fulton*)].  In other words, "lay witness testimony is permissible where the witness has had sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful." [*United States v. Beck*, 418 F.3d 1008, 1014 (9th Cir. 2005) (internal quotation marks omitted)].

837 F.3d at 297.  After reviewing the record, the Court concludes this case is a far cry from

*Livingston* and the cases cited therein, where officers' identifications could aid the jury.  Here, it

is clear that Detective Costigan's is not better positioned than the jury to identify Edwards based

on the BOLO photo, and therefore, the Court holds that his identification of Edwards is

inadmissible under Federal Rule of Evidence 701(b).[6]

This is not to say that the Government has no other means of identifying Edwards.  As the

Government itself recognizes, it may prove Edwards was the shooter inside Triangle Park through

---

[5] In fact, Edwards represents that his appearance has not undergone any substantial change since the Incident.  Mot. at 8.

[6] The Court is not persuaded by the Government's argument that the identified flaws with Detective Costigan's identification go to the weight of his testimony, rather than its admissibility.  Opp'n at 3-4 (citations omitted).  Testimony that fails to meet Rule 701(b)'s helpfulness requirement should not be admitted at all.  *See Fulton*, 837 F.3d at 297.  Because the Court has found Detective Costigan's identification of Edwards would not be helpful to a jury, the Court excludes it altogether.  Relatedly, having found Detective Costigan's identification would not be helpful to the jury under Rule 701(b), the Court "need not determine if [it] meet[s] Rule 701's other requirements." *Id.* at 300.

7

different types of evidence, such as testimony from Sargeant Macaluso[7] or by "simply play[ing] the CCTV footage for the jury and allow[ing] the jury to make the identification themselves." Opp'n at 2.[8]  All the Court decides today is that Detective Costigan's identification of Defendant is not reliable, and therefore, the Government may not prove its case by mentioning it at trial.[9,10]

---

[7] Another member of law enforcement—Sargeant Macaluso—also identified Edwards from the BOLO.  Opp'n at 4.  Whether Sargeant Macaluso identified Edwards has no bearing on the reliability of Detective Costigan's identification of Edwards from the photo.  Edwards has not moved to exclude Sargeant Macaluso's identification of Edwards, and therefore, the Court does not address it further.

[8] If Edwards is correct that his appearance has not changed much since the Incident, the jury should be able to identify whether the man in the BOLO photo is Edwards.

[9] Like the Government, the Court is not entirely clear as to whether Edwards moves "to bar Detective Costigan from testifying, to prohibit Detective Costigan from testifying that he identified Edwards based on the circulated BOLO, or to prevent the Government from presenting the fact that during the investigation Detective Costigan identified Edwards."  Opp'n at 2-3.

Because the Court has found Detective Costigan's identification of Edwards unreliable (and in turn, inadmissible), the Court necessarily precludes any reference to Detective Costigan's identification of Edwards based on the BOLO, whether that testimony come from Detective Costigan or someone else.  To the extent the Government intends to use Detective Costigan to testify as to other issues—which appears highly unlikely given he was not connected to this investigation other than through his identification of Edwards—the Government may do so. Edwards has not provided a basis to preclude Detective Costigan from testifying entirely, only that Detective Costigan cannot testify as to his identification of Edwards in the BOLO.

[10] Having decided to exclude Detective Costigan's testimony as to the identification of Edwards from the CCTV footage, the Court declines to address Edwards's alternative request for disclosure of grand jury transcripts.  *See* Mot. at 1.

8

## III.   CONCLUSION

For the reasons explained above, the Court will **GRANT** Edwards's Motion to the extent he seeks to preclude Detective Costigan's identification of Edwards.   An appropriate Order accompanies this Opinion.


Date: April 7, 2026


_____
Evelyn Padin, U.S.D.J.