**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>DAQUAN EDWARDS | No. 25cr193 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Defendant Daquan Edwards is charged with possessing five rounds of ammunition after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). D.E. 20 ("Indictment"). The charge arises from a June 25, 2023 shooting in Triangle Park in Jersey City, New Jersey (the "Incident").

This is the second pretrial motion concerning how the Government may prove that Defendant was the person who possessed the ammunition. Defendant first moved to exclude Detective William Costigan's identification of him from a still image distributed to law enforcement. D.E. 39. The Court granted that motion because Detective Costigan's identification would not assist the jury under Federal Rule of Evidence 701. D.E. 60 ("Prior Opinion" or "Prior Op."); D.E. 61.

Following that ruling, Defendant filed the present motion. D.E. 63 ("Motion" or "Mot."). He asks the Court to dismiss the Indictment because, in his view, the Government no longer has constitutionally sufficient identification evidence. He also renews his request for the grand jury transcripts and, for the first time, argues that § 922(g)(1) is unconstitutional as applied to him. The Government opposes. D.E. 66 ("Opposition" or "Opp'n"). Defendant replies. D.E. 70 ("Reply").

As explained below, the three requests do not stand on the same procedural footing. Defendant's as-applied Second Amendment challenge is not timely. That argument was

reasonably available before the Court's pretrial motion deadlines, and Defendant has not shown good cause for raising it months later. On the other hand, Defendant's challenge to the Government's remaining identification evidence arose from the Prior Opinion and is therefore timely, as is his renewed request for grand jury materials based on the same ruling. Those requests, however, both fail on their merits. Therefore, the Court will **DENY** the Motion.

## I. BACKGROUND

### A. The Incident and Indictment

Early in the morning of June 25, 2023, officers responded to reports of gunfire in Triangle Park. Prior Op. at 1. Officers found vehicles that appeared to have been struck by gunfire and recovered shell casings from the area. They did not recover a firearm and no physical evidence identified the person who had fired from inside the park. *Id.*

Several CCTV cameras captured the Incident and the events leading to it. After reviewing hours of footage from different locations, law enforcement traced the movements of a person who returned fire from inside Triangle Park and obtained a still image showing that person's face and clothing earlier in the day. *Id.* at 2. Officers used that image to create a "be on the lookout" flyer—commonly called a BOLO—and circulated it within the Jersey City Police Department. Detective Costigan and Sergeant Ryan Macaluso separately identified the person shown in the BOLO as Defendant. *Id.*; D.E. 55 at 4.

Defendant was first charged in state court in connection with the Incident. A federal criminal complaint later charged him with possessing ammunition after a felony conviction. Indictment. A federal grand jury returned the present Indictment on March 31, 2025. The Indictment alleges that Defendant knowingly possessed five rounds of GFL 9mm ammunition, knew that he had previously been convicted of a crime punishable by more than one year of

imprisonment, and possessed ammunition that had traveled in interstate and foreign commerce. Indictment.

**B. The Prior Identification Proceedings**

Detective Costigan's identification was first litigated in the related state prosecution. At a state court hearing, Detective Costigan testified that he had become acquainted with Defendant around 2008 while assigned to the Jersey City Police Department's East District Street Crimes Unit. Prior Op. at 2. He estimated that he saw Defendant between fifty and one hundred times over the next several years, but most of those contacts occurred early in that period, when Defendant was still an adolescent. *Id.* at 2–3. Detective Costigan could recall little contact after 2015 apart from a brief street encounter that he believed occurred in 2022. *Id.*

That asserted 2022 encounter raised a significant problem. Defendant was incarcerated from July 2019 until January 2023, and therefore could not have been the person whom Detective Costigan recalled seeing on a Jersey City street in 2022. *Id.* at 3. After the State agreed not to use Detective Costigan's identification, the state court barred the identification but declined to dismiss the state indictment. *Id.* The state court reasoned that excluding an identification did not itself establish that the remaining evidence was legally insufficient.

Defendant then moved in this Court to exclude Detective Costigan's identification. D.E. 39. The Court granted that request under Rule 701, which permits lay opinion testimony only when the opinion is rationally based on the witness's perception and helpful to the jury. The Court concluded that Detective Costigan's meaningful contacts with Defendant were too remote, occurred largely when Defendant was much younger, and did not place Detective Costigan in a better position than the jury to identify the person shown in the BOLO. Prior Op. at 5–7. As the Court explained, "Detective Costigan [was] not better positioned than the jury to identify

[Defendant] based on the BOLO photo." *Id.* at 7. The Court therefore excluded Detective Costigan's identification from trial. *Id.* at 7–8.

The Prior Opinion repeatedly marked the limit of that ruling—namely, that excluding Detective Costigan did "not [mean] that the Government has no other means of identifying [Defendant]." *Id.* The Government could attempt to prove identity through "different types of evidence, such as testimony from Sergeant Macaluso" or by presenting the CCTV footage for the jury's own consideration. *Id.* at 7–8. And because Defendant had not moved to exclude Sergeant Macaluso's identification, the Court expressly declined to decide whether that testimony would satisfy Rule 701. *Id.* at 8 n.7. "All the Court decide[d]" was that the Government could not use Detective Costigan's identification at trial. *Id.* at 8.

**C. Procedural History**

On April 17, 2025, the Court ordered the parties to file motions under Federal Rules of Criminal Procedure 12 and 41 by June 30, 2025. D.E. 24. No motions were filed by that date. Several months later, after a status conference, the Court afforded the parties another opportunity to file "any additional pretrial motions" by October 17, 2025. D.E. 30. On the day of that second deadline, Defendant requested a one-week extension. D.E. 35. The Court granted the request and extended the deadline to October 24, 2025. D.E. 37.

Defendant did not file by the extended deadline either. On October 31, 2025, he filed his first pretrial motion, seeking to exclude Detective Costigan's identification and separately challenging the appointment of the then-Acting United States Attorney. D.E. 39. The Court found that filing untimely and ordered Defendant to show good cause by November 7, 2025. D.E. 40. When Defendant did not address good cause by that date, the Court gave him another opportunity to do so by November 20, 2025. D.E. 43. Counsel then explained that he had been preparing for

another trial and that an August 2025 flood at his home had disrupted his practice and family life. D.E. 46. The Court ultimately exercised its discretion to consider the identification issue and granted relief in the Prior Opinion.

Defendant filed this Motion on April 23, 2026. D.E. 63. Because his request to dismiss based on the Government's remaining identification evidence followed directly from the Prior Opinion, the Court recognized that this portion of the Motion "could not have been filed sooner." D.E. 64. The Court did not make the same finding as to the newly asserted challenge to § 922(g)(1). Instead, it ordered Defendant to show good cause why the Court should consider that separate argument after the pretrial motion deadlines. *Id.*

Defendant responded that the law governing as-applied Second Amendment challenges continued to develop; that the constitutional argument was included in the same Motion as his timely post-suppression claim; that full consideration would not prejudice the Government or disrupt the schedule; and that counsel had experienced substantial professional and personal hardships during the relevant period. D.E. 65 at 1–5. The Government answered that all material legal decisions and facts were available before the October 2025 deadline and that the circumstances counsel described did not explain why this particular claim was omitted from the motion that counsel filed on October 31, 2025. Opp'n at 9–11. The parties also briefed the merits of the constitutional challenge in the alternative. *Id.* at 11–17; Reply at 5–8.

## II. ANALYSIS

The Motion presents three questions. *First*, has Defendant shown good cause for his untimely as-applied challenge to § 922(g)(1). *Second*, should the Court dismiss the Indictment based on the Government's anticipated identification evidence. And *third*, has Defendant provided

a basis to order the disclosure of the grand jury transcripts. For the reasons explained below, the answer to all three is no.

**A. The As-Applied Challenge to § 922(g)(1) Is Untimely**

Federal Rule of Criminal Procedure 12 requires a defendant to raise certain defenses and objections before trial when "the basis for the motion is then reasonably available" and the issue "can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3). That requirement includes a claim that an indictment fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). A court may set a deadline for those motions, and when a party misses it, "the motion is untimely." Fed. R. Crim. P. 12(c)(1), (3). However, a court may consider the late motion "if the party shows good cause." Fed. R. Crim. P. 12(c)(3).

Indeed, the Third Circuit has made clear that Rule 12 "provides only one circumstance in which an untimely motion can be considered—when the movant shows good cause." *United States v. Sok*, 115 F.4th 251, 261 (3d Cir. 2024) (citation modified). "Good cause is a flexible standard that will necessarily depend on the circumstances of a particular case." *Id.* at 263. When considering whether good cause exists, courts often determine whether "the information supporting the claim arose too late to file a timely Rule 12 motion." *Id.* Put differently, the Court's inquiry focuses on whether the particular ground could have been reasonably raised by the deadline.

The Third Circuit has rejected delay based on a litigant's hope that later decisions will make an available argument stronger. In *United States v. Desu*, the defendant waited while lower courts considered the effect of a Supreme Court decision. 23 F.4th 224, 232 (3d Cir. 2022). The Third Circuit held that the defendant had not shown good cause because he "waited for months to use an argument that he knew he could make at any time prior to the deadline imposed by Rule

12." *Id.* Its conclusion was direct: "Holding out for a more favorable legal landscape is not an appropriate excuse for delay." *Id.* District courts applying that rule have likewise distinguished between a genuinely new basis for relief and a later decision that merely "highlighted" a theory that was already "reasonably available." *See, e.g.*, *United States v. Patel*, Crim. No. 22-35, 2024 WL 3937479, at *2 (D.N.J. Aug. 26, 2024).

Applied here, the record does not show that the information supporting Defendant's constitutional claim arose after the motion deadlines. Defendant's Motion relies principally on *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), *United States v. Rahimi*, 602 U.S. 680 (2024), and *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) (en banc). Mot. at 5–7. Each decision preceded the extended October 24, 2025 deadline. Similarly, the Third Circuit decisions that Defendant invokes in reply—*United States v. Quailes*, 126 F.4th 215 (3d Cir. 2025), and *Pitsilides v. Barr*, 128 F.4th 203 (3d Cir. 2025)—were also issued months before Defendant's October 24, 2025 deadline. Reply at 5. And the facts necessary to frame an as-applied challenge, including Defendant's criminal history, parole status, and the conduct charged in the Indictment, were known well before he filed the suppression motion, D.E. 39.

Defendant fairly notes that Second Amendment doctrine has continued to develop after *Bruen* and that an as-applied challenge requires an individualized inquiry. D.E. 65 at 1–3; Reply at 5–6. But continuing development is not the same as unavailability. By October 2025, Defendant had the controlling decisions on which he now relies, the facts specific to his own circumstances, and the ability to argue that § 922(g)(1) was unconstitutional as applied to him. Later decisions may have refined or strengthened Defendant's argument, but they did not make it newly available. *See Desu*, 23 F.4th at 232; *Patel*, 2024 WL 3937479, at *2. Under *Desu*, waiting for a more favorable legal landscape does not establish good cause.

Nor did the Prior Opinion create or materially change the constitutional issue. That ruling solely determined whether Detective Costigan's identification would help the jury under Rule 701. *See* Prior Op. at 7–8 & n.7. It did not change Defendant's criminal history, his parole status, the statutory elements charged in the Indictment, or the framework governing a Second Amendment challenge. To be sure, excluding Detective Costigan may have caused Defendant to reassess the strength of the Government's proof and his overall litigation strategy. However, a change in trial strategy is not the same as a newly available legal basis for challenging the statute itself.

The Court also disagrees with Defendant that placing the constitutional claim in the same filing as a timely post-suppression motion makes both grounds timely. D.E. 65 at 2–3. Rule 12 asks whether the basis for a particular defense or objection was reasonably available before the deadline. The identification argument depends on a ruling issued in April 2026; the as-applied challenge does not. The Court's decision to consider Defendant's earlier, untimely motion likewise did not reopen the pretrial motion schedule for any additional ground that could have been raised before the deadline. *See United States v. Elcock*, Crim. No. 17-5, 2019 WL 3577658, at *6–8 (D.V.I. Aug. 5, 2019) (enforcing a later pretrial motion deadline although the court had exercised its discretion to consider an earlier untimely motion).

The Court has carefully considered counsel's explanation for the delay, but remains unpersuaded. Counsel describes the dissolution of his former practice in mid-2025, the work required to establish a new firm, a serious flood at his home in August 2025, his spouse's medical emergency in December 2025, and his own surgery in March 2026. D.E. 65 at 3–4. While the Court does not discount the seriousness of those events, they do not establish good cause for this untimely challenge. Despite the firm transition and the August flood, counsel filed D.E. 39 on October 31, 2025, raising two substantial pretrial issues. The response does not explain why the

as-applied challenge—which rested on then-existing law and known facts—could not also have been raised in that filing or identified when the Court twice requested a showing of good cause. The December 2025 medical emergency and the March 2026 surgery occurred after the October deadline and therefore cannot explain the earlier omission either. Although those later events help explain the demands on counsel during the months before this Motion, Rule 12 requires good cause for failing to raise the claim when it was due.

Finally, Defendant stresses that no trial date had been set, that the Government had a full opportunity to respond, and that the constitutional question is important. D.E. 65 at 4–5. Nevertheless, those arguments do not explain why the issue was not raised when its legal and factual basis was already available.

In sum, Defendant has not shown good cause to excuse this untimely challenge. The Court will therefore **DENY** the as-applied challenge.[1]

Nevertheless, even if the Court were to reach the merits, Defendant's as-applied Second Amendment challenge would fail. The Court assumes without deciding that Defendant's alleged possession of ammunition is conduct covered by the Second Amendment's plain text. *See District of Columbia v. Heller*, 554 U.S. 570, 626–27 & n.26 (2008); *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17, 24 (2022). When the Second Amendment's text applies, the Government must justify the challenged restriction by demonstrating its consistency with the Nation's historical tradition of firearm regulation, but it need not identify a historical "dead ringer"

[1] The Court does not make this decision lightly. It reaches this conclusion against a procedural history in which Defendant received multiple extensions of the pretrial motion deadline, and after the Court previously considered an untimely motion on the merits. Defense counsel has missed several court-ordered deadlines in this action. While the Court does not minimize counsel's stated personal and professional circumstances, further excusing a claim that was reasonably available before the deadline would deprive the Court's scheduling orders of meaningful effect.

or "historical twin"; the relevant inquiry is whether the modern restriction is sufficiently analogous in how and why it burdens the right. *Bruen*, 597 U.S. at 29–30; *United States v. Rahimi*, 602 U.S. 680, 691–93 (2024).

Here, binding Third Circuit precedent supplies the relevant historical principle. In *United States v. Moore*, the Third Circuit concluded that early American forfeiture laws "yield the principle that a convict may be disarmed while he completes his sentence and reintegrates into society," and therefore held § 922(g)(1) constitutional as applied to a defendant on federal supervised release. 111 F.4th 266, 272–73 (3d Cir. 2024). *United States v. Quailes* extended that holding to state supervision, explaining that the historical tradition of "disarming convicts who are completing their sentences" applies "with equal force" to persons on parole or probation and holding that § 922(g)(1) is constitutional as applied to such persons. 126 F.4th 215, 217, 223–24 (3d Cir. 2025). The record reflects that Defendant was on parole on June 25, 2023, when the charged conduct allegedly occurred. *See* Opp'n at 2, 12. Thus, under *Moore* and *Quailes*, § 922(g)(1) was constitutional as applied to Defendant while he was still completing his sentence.[2]

---

[2] Furthermore, Defendant's circumstances are far removed from the plaintiff in *Range v. Attorney General*, making his reliance on it unpersuasive. There, the plaintiff's only disqualifying offense was a decades-old, nonviolent food stamp fraud conviction, and the record contained no evidence that he posed a present physical danger. 124 F.4th 218, 222–24, 232 (3d Cir. 2024) (en banc).

Defendant, by contrast, has prior convictions for conspiracy to distribute prescription drugs, two controlled substance distribution offenses, aggravated assault, and bail jumping. Opp'n at 2, 16–17. Courts in this Circuit have repeatedly rejected as-applied challenges by defendants with similarly serious or repeated criminal histories. *See, e.g.*, *United States v. Goodnight*, Crim. No. 23-1882, 2025 WL 1276000, at *2 (3d Cir. May 2, 2025) (recent drug trafficking and firearms convictions); *United States v. Savery*, Crim. No. 24-551, 2025 WL 1165607, at *9–10 (D.N.J. Apr. 22, 2025) (multiple drug trafficking convictions); and *United States v. Harris*, Crim. No. 20-679, 2024 WL 2260907, at *7 (D.N.J. May 17, 2024) (armed robbery).

**B. The Indictment Will Not Be Dismissed Based on Anticipated Proof**

Unlike his 922(g)(1) challenge, Defendant's post-suppression request to dismiss is timely because it rests on the effect of the Prior Opinion. D.E. 64. It nonetheless seeks relief that Rule 12 generally does not permit.

Ordinarily, a pretrial motion tests whether the allegations in an indictment charge a federal offense. However, "[u]nless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000). Rule 12 permits dismissal when the allegations do not state an offense, "but such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." *Id.* at 661. The reason is practical as well as doctrinal: the Government "is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal" under Rule 29. *Id.*

In other words, criminal procedure has no counterpart to civil summary judgment. As the Third Circuit has explained, a court evaluating a Rule 12 motion accepts the indictment's factual allegations as true and asks only whether those allegations, if proved, would permit a jury to find the charged offense. *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012), *abrogated on other grounds by Rehaif v. United States*, 588 U.S. 225 (2019). "Evidentiary questions—such as credibility determinations and the weighing of proof—should not be determined at this stage." *Id.* Thus, while a court may resolve the merits before trial on a stipulated record, the parties have not stipulated to the relevant facts here. *See United States v. Jones*, 299 F. App'x 187, 189–90 (3d Cir. 2008) (noting a court may dismiss an indictment on a pretrial motion to dismiss in the "rare"

case there is a stipulated record). Accordingly, the Court considers the Indictment on its face and whether, if proved, it would allow a jury to find Defendant guilty of the charged offense.

Here, the Indictment is sufficient on its face. It identifies Defendant, the date and district of the charged conduct, the five rounds of ammunition allegedly possessed, the qualifying prior conviction and knowledge element, and the alleged interstate-commerce nexus. Indictment. Those allegations track the elements of § 922(g)(1), provide notice of the charge, and permit Defendant to plead a judgment as a bar to a later prosecution for the same offense. Defendant does not identify a missing statutory element or claim that the Indictment's allegations, taken as true, fail to state an offense.

Instead, Defendant argues that the suppression of Detective Costigan's identification leaves a "structural due process" problem because the Government allegedly has no reliable evidence identifying him as the person shown in the CCTV footage. Reply at 1–3. The Court understands the argument as Defendant asserting that, after the Prior Opinion, the Government cannot connect him to the charged possession and should not be permitted to proceed to trial on speculation. But resolving that contention now would require the Court to forecast the Government's trial presentation, rule on evidence that is not presently before it, and assess whether the proof as a whole could support a conviction. That is a sufficiency determination, whatever label Defendant places on it.

Furthermore, contrary to Defendant's suggestion, the Prior Opinion does not leave the Government without identification evidence. *See* Mot. at 3–4. It solely excluded Detective Costigan's identification because his own history with Defendant did not make his opinion helpful to the jury. The Court did not suppress the CCTV footage or prevent the jury from viewing it. And the Court expressly identified Sergeant Macaluso's testimony as another potential means of

proving identity while reserving any ruling on whether that testimony would be admissible. Prior Op. at 7–8 & n.7.

The Court does not decide whether Sergeant Macaluso's identification will be admissible at trial or whether the Government's evidence will be sufficient to sustain a conviction because those questions cannot be resolved through a Rule 12 motion directed at a facially sufficient Indictment. Defendant may challenge Sergeant Macaluso's testimony through an appropriate motion *in limine* and may test the sufficiency of the Government's proof under Rule 29 after the Government presents its case. Accordingly, the Court will **DENY** the request to dismiss the Indictment based on the Government's anticipated proof.

### C. Defendant Has Not Shown a Basis to Disclose the Grand Jury Transcripts

Defendant alternatively asks the Court to disclose the grand jury transcripts, at least for *in camera* review, so that he can determine whether the Government presented Detective Costigan's identification. Mot. at 4–5; Reply at 3–4. Federal Rule of Criminal Procedure 6(e)(3)(E) permits disclosure of otherwise secret grand jury material in limited circumstances. As relevant here, a court may authorize disclosure at a defendant's request if the defendant shows that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

That language reflects the strong and longstanding policy favoring grand jury secrecy. "As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity." *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989). A party seeking disclosure must therefore demonstrate a "particularized need" for the material that outweighs the public interest in secrecy. *United States v. Jackson*, 363 F. App'x 159, 161 (3d Cir. 2010) (quoting *id.*). If that threshold is met, the Court weighs the competing interests and orders

only the disclosure "needed for the ends of justice." *McDowell*, 888 F.2d at 289 (quoting *In re Grand Jury Matter*, 682 F.2d 61, 62 (3d Cir. 1982)).

A particularized need may exist when the requested testimony bears on a concrete ground for dismissal or when the movant makes a substantial showing of gross or prejudicial irregularities in the grand jury process. *See United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972). A generalized request to inspect the proceedings for possible error is not enough. *United States v. Kerr*, Crim. No. 07-3, 2008 WL 1711412, at *3 (W.D. Pa. Apr. 11, 2008). Nor may a defendant rely on "vague allegation[s]" or speculation to overcome the presumption that the grand jury acted regularly. *United States v. Minerd*, 299 F. App'x 110, 111 (3d Cir. 2008); *In re Grand Jury Proceedings*, 632 F.2d 1033, 1040 (3d Cir. 1980).

To support his request for grand jury materials, Defendant points to the sequence of events: the State agreed in January 2025 not to use Detective Costigan's identification, and a federal grand jury returned the Indictment approximately two months later. Mot. at 4–5. From that chronology, Defendant infers that the federal grand jury likely heard Detective Costigan's identification and argues that the Prior Opinion's later exclusion of that identification calls into question the integrity of the Indictment.

Even assuming Defendant's inference is correct, the argument fails as a matter of law. The presentation of Detective Costigan's identification to the grand jury would not render the Indictment defective merely because the Court later excluded that identification from trial under Rule 701. The Federal Rules of Evidence do not govern grand jury proceedings, and an indictment may rest on evidence that would be inadmissible at trial. Decades ago, the Supreme Court in *Costello v. United States* rejected the premise that a defendant may challenge an indictment because the grand jury heard "inadequate or incompetent evidence." 350 U.S. 359, 363 (1956).

Allowing that inquiry, the Court explained, would invite "a kind of preliminary trial" into the adequacy of the evidence supporting nearly every indictment. *Id.* Thus, "[a]n indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits." *Id.*

The Prior Opinion did not identify an irregularity in the grand jury process. Rather, it held that Detective Costigan's identification would not assist the trial jury under Rule 701 because of the circumstances of his own familiarity with Defendant. Defendant has not presented (either previously or with his Motion) any facts that suggest prosecutors knowingly presented false testimony, misled the grand jury, withheld information they were required to provide, or otherwise subverted the charging process. The possibility that the grand jury considered evidence later excluded at trial is not itself misconduct and does not supply a dismissible defect.

In a similar vein, Defendant's reliance on *Bank of Nova Scotia v. United States* is unpersuasive. 487 U.S. 250 (1988). That decision permits dismissal for a nonconstitutional grand jury error only when an identified violation "substantially influenced the grand jury's decision to indict" or creates "grave doubt" that the decision was free from that violation. *Id.* at 256. Defendant has not first identified a violation to which that prejudice inquiry could attach. Without a concrete irregularity, the Court would have no basis to determine that disclosure could reveal a ground for dismissal.

Nor has Defendant provided a justification for the Court to conduct an *in camera* review. Although such review is less intrusive than disclosure directly to a party, it still requires the Court to pierce grand jury secrecy on more than a request to search for a possible defect. Here, Defendant has shown only that Detective Costigan's identification existed when the grand jury met and may have been presented. Because that possibility would not itself invalidate the Indictment, Defendant

has not demonstrated the particularized need required by Rule 6(e). Accordingly, the Court will **DENY** Defendant's renewed request for the grand jury transcripts, including *in camera* review.

## III. CONCLUSION AND ORDER

For the reasons stated above,

**IT IS**, on this **13th** day of August, 2026,

**ORDERED** that Defendant's Motion, D.E. 63, is **DENIED**; and it is further

**ORDERED** that within **30 days** of this Order, the parties shall file a joint status letter on the docket, indicating whether the parties are otherwise ready to proceed to trial; and it is finally

**ORDERED** that the Clerk of Court shall send Edwards a copy of this Order by regular U.S. mail.

Evelyn Padin, U.S.D.J.